UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SHIREAKA A., | Case No. 22-12256 |
| Plaintiff, | Gershwin A. Drain |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr. |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 17)**

Plaintiff Shireaka A. brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under the Social Security Act.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 14), the Commissioner's cross-motion for summary judgment (ECF No. 17), Plaintiff's reply (ECF No. 19) and the administrative record (ECF No. 10).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

# I.    DISCUSSION

## A.    Background and Administrative History

Plaintiff alleges her disability began on November 1, 2019, at the age of 46. (ECF No. 10, PageID.49).  On June 4, 2020, she applied for disability insurance benefits.  (*Id.*).  In her disability report, she listed ailments which diminished her ability to work.  The ailments included: chronic gout, morbid obesity, anxiety, depression, prediabetes, rheumatoid arthritis, chronic constipation, hypertensive disorder, ankle/foot surgery, and arthritis in one ankle.  (*Id.* at PageID.282).  Her application was denied on December 7, 2020.  (*Id.* at PageID.490).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  On October 25, 2021, ALJ Therese Tobin held a hearing, at which Plaintiff and a vocational expert ("VE") testified.  (*Id.* at PageID.69-88).  On December 7, 2021, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.49-62). Plaintiff later submitted a request for review of the hearing decision.  On August 3, 2022, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.37-39).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on September 23, 2022.

## B.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since November 1, 2019, the alleged onset date.  (ECF

No. 10, PageID.51).  At **Step 2**, the ALJ found that Plaintiff had the following

severe impairments: right ankle fracture, osteoarthritis, obesity, gout, essential

hypertension, depression, and anxiety.  (*Id.* at PageID.52).  At **Step 3**, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments.  (*Id.* at

PageID.52-54).  **Between Steps 3 and 4** of the sequential process, the ALJ

evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that

Plaintiff had the RFC:

> to perform light work . . . except she can occasionally
> climb ramps and stairs, occasionally climb ladders, ropes,
> or scaffolds, and occasionally balance, stoop, kneel,
> crouch, and crawl. She can have occasional exposure to
> unprotected heights and dangerous machinery. She
> requires a sit-stand option permitting change in position
> every 30-minutes if needed and without disturbing the
> workplace and she would not be off-task more than 10%
> of the workday due to the sit-stand option. The claimant
> is limited to performing simple, routine tasks.

(*Id.* at PageID.54-60).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.60-61).  At **Step 5**, considering

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as office helper, office clerk, and information clerk.  (*Id.* at PageID.61-62).  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 1, 2019 through the date of the decision.

### C.     Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

5

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff's first two arguments center on her mental impairments. She argues that the ALJ did not properly evaluate her therapist Ms. Morton's opinion and that the ALJ did not adequately account in the RFC for moderate limitations in

concentration, persistence, and pace ("CPP").  Her third argument is that the ALJ improperly evaluated her subjective allegations of pain.

1.    Evaluation of Ms. Morton's Opinion

The ALJ is directed to assess the persuasiveness of both treating and non-treating medical evaluations based on how well they are supported by the rest of the record.  20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").  The factors an ALJ must consider in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion.  §§ 404.1520c(c), 416.920c(c).

ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to . . . explain" the consideration given to the remaining factors.  §§ 404.1520c(a-b); 416.920c(a-b).  "Supportability" refers to the explanations given by the medical source to support their opinion.  "Consistency" refers to the consistency of the medical

opinion with the evidence from other medical and nonmedical sources.  §§

404.1520c(c)(1-2), 416.920c(c)(1-2).

The ALJ found Ms. Morton's opinion unpersuasive.  Ms. Morton rated

Plaintiff's ability to function on a scale that included categories for "seriously

limited, but not precluded," "unable to meet competitive standards," and "no useful

ability to function."  (ECF No. 10, PageID.311).  The first two are self-

explanatory.  "No useful ability to function" means "an extreme limitation" such

that the claimant cannot perform the activity in a regular work setting.  (*Id.*).  Ms.

Morton rated Plaintiff in the "no useful ability" category in many activities,

including understanding, remembering, and carrying out very short and simple

instructions, completing a normal workday and week without interruptions from

symptoms, and performing at a consistent pace without an unreasonable number

and length of rest periods.  Plaintiff was rated "unable to meet competitive

standards" in maintaining attention for two-hour segments and maintaining regular

attendance and punctuality.  Ms. Morton further opined that Plaintiff would be off

task 25% or more of a workday and would miss more than four days of work per

month due to her impairments.  (*Id.* at PageID.310, 312).

The ALJ found the opinion unpersuasive because it "is wholly inconsistent

with and unsupported by Ms. Morton's treatment notes and that of the agency

consultative psychological examiner and the claimant's psychiatrist."  (*Id.* at

PageID.59).  The ALJ noted that treatment notes showed normal mental status, such as intact judgment and impulse control, and normal concentration and thought content.  Treatment notes also reflect Plaintiff's ability to complete tasks related to her physical health.  Also noted are psychological stability and improved clinical status.  (*Id.*).

Plaintiff argues that Ms. Morton's opinion is consistent with the treatment notes in the record.  For instance, every mental status examination reflects a depressed mood, and at times Plaintiff's mental status examinations revealed anxious mood, angry mood, or agitation/shaking.  She asserts that the treatment notes support the limitations because they reflect her reported, subjective mental states of forgetfulness, crying, poor sleep, and difficulty getting out of bed and performing daily activities.  (ECF No. 14, PageID.663).  She accuses the ALJ of "cherry-picking" the evidence to support the decision.  (ECF No. 19, PageID.711-12).  Plaintiff contends that the evidence does not support the ALJ's partial reliance on psychological stability and improved clinical status.  According to her, while psychologist Dr. Merritt-Davis noted some improvement at a March 2021 appointment, Ms. Morton's records reveal persistent or worsening symptoms.  For example, Ms. Morton assigned worsening Global Assessment Functioning

("GAF") scores between January 2021 and July 2021, ranging from 50 to 30 respectively.[3]  (ECF No. 14, PageID.664).

The Commissioner responds that the ALJ properly discounted the opinion. She points out that the ALJ addressed evidence of anxious mood, angry mood, and agitation, and medical records noting improvement or worsening of symptoms elsewhere in the decision, so it is not the case the ALJ ignored evidence favorable to Plaintiff.  (ECF No. 17, PageID.690-91).  The Commissioner characterizes Plaintiff's argument as a request for the Court to re-evaluate the evidence.  She also argues that the ALJ did not err in determining that Ms. Morton's opinion was unsupported by the other opinion evidence.  (*Id.* at PageID.692-95).

The undersigned suggests there was no reversible error in the ALJ's treatment of Ms. Morton's opinion.  The Court "will not reweigh the evidence considered by the ALJ."  *Seibert v. Comm'r of Soc. Sec.*, 2019 WL 1147066, at *2 (E.D. Mich. Mar. 13, 2019) (citing *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)).  Yet this Court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide

---

[3] "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006).  "'[T]he Commissioner has declined to endorse the [GAF] score for use in' Social Security benefits programs."  *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016) (quoting *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 716 (6th Cir. 2013)).  And the Sixth Circuit has announced "[w]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."  *Kornecky*, 167 F. App'x at 503. ALJs are directed to consider GAF scores case-by-case.

an accurate and logical bridge between the evidence and the result." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829–30 (E.D. Mich. Mar. 28, 2017) (quoting *Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011)).  The ALJ created an accurate and logical bridge between the evidence and the decision.  Though there are treatment notes reflecting findings of anxiety, anger, or agitation, and Plaintiff was found to be depressed at every appointment, the remaining portions of the mental status examinations were consistently largely normal.  And Plaintiff did not explain how her positive findings support or are consistent with the severe limitations in Ms. Morton's opinion, such as the low GAF scores or the opinion that Plaintiff has no useful ability to understand and remember short instructions or to complete a normal workday without interruption.  The undersigned finds no fault in the ALJ's conclusion that the opinion conflicts with and is unsupported by the treatment records.

The ALJ also properly compared Ms. Morton's opinion to the opinion of the examining state agency psychologist and found them inconsistent.  Dr. Daldin met Plaintiff on November 30, 2020, for a psychological examination.  Mental status examination revealed largely normal functioning, including a pleasant attitude, unremarkable affect, and normal memory.  (ECF No. 10, PageID.506-07).  In his medical source statement, he concluded that Plaintiff was psychologically sound

but had situational depression and anxiety. He also opined that Plaintiff's short- and long-term memory were intact and her mood was stable. He concluded she was not disabled because of psychological problems and could handle her own finances. (*Id.* at PageID.507). In assessing this opinion, the ALJ first stated that determinations about disability, such as Dr. Daldin's conclusion that Plaintiff was not disabled based on psychological problems, is reserved for the Commissioner. She found the rest of the opinion consistent with Dr. Daldin's expertise, Plaintiff's mental status examinations, and normal memory and calculation abilities, and supported by Plaintiff's reported ability to handle finances. (*Id.* at PageID.59). The ALJ recognized, however, that Plaintiff did not begin regular mental health treatment until after her examination with Dr. Daldin. (*Id.* at PageID.57). Dr. Daldin's opinion was found partially persuasive. The ALJ was not wrong to note that Ms. Morton's restrictive opinion conflicts with and is unsupported by Dr. Daldin's opinion.[4]

Further, Plaintiff's insistence that the ALJ cherry-picked the evidence to support the decision is not well taken. The ALJ did not cherry-pick the evidence simply because she resolved discrepancies against Plaintiff. As mentioned, the

---

[4] The Commissioner, perhaps in an abundance of caution, also discussed how the medical findings by the agency reviewing psychological consultants vary from Ms. Morton's opinion. (ECF No. 17, PageID.693-95). The ALJ, however, did not cite these opinions in the discussion of Ms. Morton's opinion, so it does not appear that she considered them when evaluating Ms. Morton's opinion.

undersigned does not conduct a *de novo* review of the record, and an ALJ's

findings are not subject to reversal for the sole reason that substantial evidence

could support the opposite finding. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th

Cir. 2001). The ALJ properly weighed the evidence and her conclusion that Ms.

Morton's opinion is unpersuasive is supported by substantial evidence.

### 2. Concentration, Persistence, and Pace ("CPP")

Next, Plaintiff asserts that the RFC does not adequately account for her

limitations because a limitation to simple and routine tasks does not accommodate

moderate limitations in CPP.

At Step Three of the sequential analysis, the ALJ addressed the "paragraph

B" criteria of Listings 12.04 and 12.06. The B criteria are the same for both

listings. This paragraph of the listings provides the criteria representing four areas

of functioning the ALJ assesses to evaluate how a claimant's mental disorders limit

their functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The area relevant to

Plaintiff's appeal is to concentrate, persist, or maintain pace. This area refers to the

ability to focus attention on work and stay on task as a sustained rate. *Id.* at §

12.00(E)(3). The ALJ found Plaintiff has "moderate limitation" in this area. (ECF

No. 10, PageID.53). A moderate limitation indicates functioning that is "fair." 20

C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c-e). To contrast this, a marked

limitation indicates "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."

In support of her decision, the ALJ discussed the following.

> The claimant alleges having difficulty concentrating and completing tasks.  However, the claimant reported the ability to arrange transportation, count change, pay bills by computer, watch television, Internet browse, read sporadically, maintain an email account, follow instructions, and manage her finances and medical care. Additionally, the record demonstrates the claimant's ability to maintain appropriate alertness, attention, and concentration, relate during examinations, recall information, and complete simple tasks, all of which indicate her difficulties with maintaining concentration, persistence, and pace are no more than moderate.

(ECF No. 10, PageID.53) (citations omitted).

Plaintiff says that the Court cannot trace the path of the ALJ's reasoning behind limiting Plaintiff to simple, routine tasks to account for moderate limitation in CPP.  While she recognizes that there is no specific way an ALJ is mandated to account for moderate CPP limitations, she notes that in cases such as this where the ALJ independently finds moderate limitation—as opposed to a medical professional—courts are more likely to order a remand.  Plaintiff asserts that the difficulty of a task (simple, routine) does not equate to the difficulty of maintaining concentration and persistence.  (ECF No. 14, PageID.665-67).

The Commissioner argues that the paragraph B criteria are not RFC findings.  (ECF No. 17, PageID.696-97).  Instead, the RFC "need only capture the

14

concrete consequences of a claimant's mental impairments on a claimant's ability to work." (*Id.*). The Commissioner contends that the ALJ met her burden by finding that the combined effect of all of Plaintiff's impairments supported moderate limitation in CPP and limiting Plaintiff to simple, routine tasks. According to the Commissioner, the Sixth Circuit recognizes that limitation to simple, routine tasks adequately accounts for moderate limitation in CPP. (*Id.* at PageID.698-99).

As Plaintiff points out, "there is no bright-line rule regarding moderate CPP limitations, and the mere fact that an ALJ found such limitations does not mean the claimant's RFC must include any particular non-exertional limitation; even a limitation to 'unskilled work' can be sufficient depending on the claimant's particular limitations." *Knapp v. Comm'r of Soc. Sec.*, 2020 WL 7776022, at *5 (E.D. Mich. Nov. 30, 2020), *report and recommendation adopted*, 2020 WL 7770890 (E.D. Mich. Dec. 30, 2020) (citation omitted). And while some "[c]ourts are more likely to order a sentence-four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion[,]" *Ervin v. Comm'r of Soc. Sec.*, 2017 WL 947312, at *8 (E.D. Mich. Jan. 9, 2017), that has not become the rule in this District. Notably, *Ervin* said courts are *more likely* to order remand, not that courts always order remand. A case may be remanded because "limiting a claimant to unskilled

work may, *in some instances*, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task." *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011), *report and recommendation adopted*, 2011 WL 2682892 (E.D. Mich. July 11, 2011) (citation omitted) (emphasis added).

Since there is no bright-line rule requiring remand where the ALJ finds moderate CPP limitation but limits the claimant to only simple, routine tasks, "this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Taylor*, 2011 WL 2682682, at *7; *Barajas v. Comm'r of Soc. Sec.*, 2021 WL 4099250, at *5-6 (E.D. Mich. Aug. 10, 2021); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace."). In *Kepke*, the Sixth Circuit found that in the absence of "evidence in the record that provides for specific, concrete limitations on [claimant's] ability to maintain concentration, persistence or pace while doing simple, unskilled work," the limitation to simple, unskilled work accommodated the claimant's impairments. *Id.*

Plaintiff bears the burden of proving the need for a more restrictive RFC. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). She has cited no evidence of specific functional limitations associated with CPP that would support a more restrictive RFC. The ALJ properly discounted Ms. Morton's opinion, so what is left are the largely normal mental status examinations, Plaintiff's depression and anxiety, and the opinion of the state agency psychologist who found no limitations in CPP. It is also not as if the ALJ ignored her responsibility to craft an RFC that accounts for all of Plaintiff's mental impairments. At the end of the paragraph B discussion, she stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(ECF No. 10, PageID.54). In other words, the ALJ stated that she crafted an RFC including all the limitations she found reflective of Plaintiff's ability to function, excluding a limitation to specifically account for any issues in concentration, persistence, or pace. Thus, the absence of a specific limitation to account for CPP in the RFC is not *per se* error and is, here supported by substantial evidence. *See id.* (citing *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir.

2014)); *see also Sadger v. Comm'r of Soc. Sec.*, 2021 WL 4784271, at *10-11

(E.D. Mich. Aug. 23, 2021); *Holdaway v. Kijakazi*, 2023 WL 8007105, at *14

(E.D. Tenn. Nov. 17, 2023).

### 3.     Subjective Complaints

Finally, Plaintiff argues that the ALJ improperly assessed her subjective

complaints.  When a claimant alleges symptoms of disabling severity, an ALJ must

follow a two-step process for evaluating these symptoms.  *See Moore v. Comm'r of*

*Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014); *Massey v. Comm'r of Soc. Sec.*,

409 F. App'x 917 (6th Cir. 2011).  First, the ALJ must determine whether there is

an underlying medically determinable physical or mental impairment that could

reasonably be expected to produce a claimant's symptoms.  The ALJ here found

Plaintiff's impairments could reasonably be expected to produce her symptoms.

Second, the ALJ "must evaluate the intensity and persistence of [the

claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit

[the claimant's] capacity for work."  20 C.F.R. § 404.1529(c)(1); *see also* SSR 16-

3p, 2016 WL 1119029 (March 16, 2016).  In evaluating a claimant's symptoms at

the second step of the analysis, the ALJ must look to medical evidence, statements

by the claimant, other information provided by medical sources, and any other

relevant evidence on the record.  Beyond medical evidence, the ALJ should

consider seven factors.  These factors are: (1) the individual's daily activities; (2)

the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p, 2016 WL 1119029, at * 7. The ALJ need not exhaustively discuss each of these factors or all of the evidence in the record but need only acknowledge the factors and discuss the evidence that supports the decision. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("The ALJ is not required to discuss methodically each [factor], so long as he acknowledged and examined those [factors] before discounting a claimant's subjective complaints.") (citation omitted).

Plaintiff contends that the ALJ did not provide specific and supported reasons for discounting her subjective allegations. Instead, she says the ALJ provided one reason: that she reported looking for computer work she could do from home undermines her allegations of disability. (ECF No. 14, PageID.670). This, she says, supports the credibility of her statements. She asserts that the ALJ's reliance on her activities of daily living is misplaced because they do not

show her ability to function on a sustained basis. (*Id.*). She also argues that her statements are consistent with the other evidence in the record, such as her reports of pain and other symptoms to medical professionals. (*Id.* at PageID.672-73).

In the view of the undersigned, the ALJ did not reversibly err in her consideration of Plaintiff's subjective allegations. Instead, the ALJ complied with the regulations. She began her discussion with Plaintiff's physical impairments. This includes Plaintiff's history of ankle surgery, ankle pain, diagnosis of gout, and use of pain medication. The ALJ noted that Plaintiff used a walker or other assistance device at appointments, such as a July 2020 examination. During that examination, however, Plaintiff had intact lower body range of motion, full muscle strength, intact lower extremity sensation, and no edema. X-rays showed positive findings, so Plaintiff's medication dosage was increased, physical therapy was prescribed, and diet and exercise were recommended. (ECF No. 10, PageID.55-56). Despite that treatment, as the ALJ discussed, Plaintiff continued to report severe joint and gout pain, yet failed to follow up with rheumatology and presented without tenderness or edema in her joints. The ALJ noted that by April 2021, Plaintiff reported that her medication decreased her gout flares such that she could walk for exercise, go fishing, and complete tasks related to her physical health. Despite noting this improvement, the ALJ was careful to mention that she "nevertheless considered the combined effect of her gout flares, osteoarthritis pain,

and obese state when limiting the claimant to less than a full range of light exertion as described in the above residual functional capacity finding." (*Id.* at PageID.56). Lastly, the ALJ evaluated the opinion evidence, including the state agency consultants who found Plaintiff capable of less than a full range of light work. (*Id.* at PageID.58-60). The ALJ's discussion touched on all the factors required to be evaluated in assessing a claimant's subjective allegations.

After discussing the medical evidence, the ALJ concluded that Plaintiff's statements were not entirely consistent with the medical and other evidence in the record. (*Id.* at PageID.58).

Though Plaintiff can point to the consistency in her allegations of continued pain and minimal functioning to providers, that there is evidence in support of her position does not detract from the substantial evidence cited by the ALJ. As much as Plaintiff invites to the Court to reweigh the evidence, the Court will not do so. *Avers v. Kijakazi*, 2021 WL 4291228, at *6 (N.D. Ohio Sept. 21, 2021) ("To the extent Plaintiff is asking the court to reweigh the evidence *de novo* and arrive at its own RFC determination, such an invitation exceeds the scope of this court's review."). That said, an ALJ cannot ignore evidence favorable to Plaintiff. But the ALJ did not do that here.

Plaintiff acknowledges that the ALJ discussed the evidence, but says that because the ALJ did not reference that evidence related to her symptoms

evaluation, the reasoning behind that decision is not apparent. (ECF No. 19, PageID.716-17). The undersigned disagrees. Courts are directed to read ALJ decisions as a whole. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (observing that the ALJ's rationale need not come in "tidy packaging" and that courts must "read the decision as a whole and with common sense"). Reading the decision as a whole, the discussion of the medical evidence and Plaintiff's allegations was in part for assessing her allegations. Before addressing any evidence, the ALJ laid out her obligations to consider Plaintiff's symptoms using the two-step process mentioned above. Then, she later discussed the allegations more fully and the evidence related to those allegations. Finally, she concluded that the allegations conflict with the evidence. The ALJ was not required to repeat the analysis again in her concluding paragraph on Plaintiff's allegations. The ALJ sufficiently stated her reasons for finding Plaintiff's allegations not entirely consistent with the record.

Further, though the ALJ discussed Plaintiff's activities of daily living, such as gardening when she felt well, watching tv, walking for exercise, and fishing, she did not rely on those activities as the sole reason for discounting Plaintiff's allegations, as Plaintiff suggests. The ALJ was required to address Plaintiff's activities of daily living. But the ALJ also compared those activities and Plaintiff's allegations to the medical evidence, and found them inconsistent. The undersigned

will not reweigh the evidence.  The ALJ's decision is supported by substantial evidence, so it should be affirmed.

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 3, 2024                     s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge